UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LISA M. WORTMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 09-442 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Lisa Wortman filed this action on March 10, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on March 27, 2009. On October 7, 2009, the parties filed a Joint Stipulation ("JS") that addresses the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this opinion.

///

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On August 26, 2005, Wortman filed an application for Supplemental Security Income benefits alleging a disability onset date of May 1, 1996. Administrative Record ("AR") 11, 31, 56. The application was denied initially and upon reconsideration. AR 11. An Administrative Law Judge ("ALJ") conducted a hearing on February 26, 2008, at which Wortman testified. AR 242-259. The ALJ conducted a second hearing on September 9, 2008, at which a medical expert ("ME"), and a vocational expert ("VE") testified. AR 260-271. On October 22, 2008, the ALJ issued a decision denying benefits. AR 11-18. The Appeals Council denied Wortman's request for review. AR 4-6. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

Wortman has the following severe combination of impairments: "degenerative disc disease of the lumbar spine, insulin dependent diabetes mellitus with diabetic neuropathy and nonproliferative diabetic retinopathy, asthma with chronic cigarette smoking, bilateral cataracts, and anxiety disorder not otherwise specified." AR 13.

Wortman has the residual functional capacity ("RFC") to perform light work[1] "except occasionally climb, stoop, kneel, crouch, or crawl, no climbing of ladders, ropes or scaffolds, avoid fumes, odors, and other similar pulmonary irritants, must work in an air-conditioned work environment, avoid unprotected heights, and no exposure to hazards such as moving machines. . . . [T]he claimant is not significantly limited in terms of performing mental work-related activities except for being moderately limited in terms of understanding, remembering and carrying out detailed instructions, maintaining concentration and attention for extended

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

periods, making simple work-related decision[s], completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the public, and responding appropriately to changes in the work setting.  The claimant is able to understand and carry out simple instructions, avoid ordinary hazards, and sustain concentration and attention for simple repetitive tasks, but not complex tasks, but she is not able to deal with the general public due to her anxiety disorder." AR 15 (internal footnote omitted).

Wortman has no past relevant work.  AR 17.  However, jobs exist in significant numbers in the national economy that Wortman can perform, including parts assembler, lunch room counter attendant, and swatch clerk.  AR 17-18.

### C. State Agency Opinion Regarding Mental Residual Functional Capacity

Wortman argues that the ALJ ignored the Mental Residual Functional Capacity Assessment of the state agency physician, Dr. Amado, and specifically the areas in which Dr. Amado found Wortman moderately limited.  JS at 3-4 (citing AR 175-77).

The ALJ's mental residual functional capacity assessment expressly noted Wortman's moderate limitations in each area identified by Dr. Amado.  AR 15.  The ALJ's mental RFC is also consistent with Dr. Amado's conclusion that Wortman "can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to coworkers and supvs.  Cannot work with public."  AR 177; *see* AR 15.  An "ALJ does not need to discuss every piece of evidence," and need not address medical source opinions that are adopted in his RFC.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and quotation marks omitted).  Any error is harmless.  *See Stout v. Commissioner*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)*.*

### D. **Wortman's Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Wortman's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 16.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ made no finding of malingering. "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."


*Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13,[2] internal quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found that Wortman's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." AR 16. The ALJ gave the following reasons for discounting Wortman's credibility: (1) subjective allegations are unsupported by the treating source records; (2) inconsistencies in Wortman's statements; and (3) exaggeration of her symptoms. AR 16-17.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ specifically discounted Wortman's statements concerning: (1) her "alleged fatigue weakness in he[r] hands and legs," "complaints of neuropathic pain and disturbed sensation such as numbness and coldness," her need "to nap two to four hours per day" and "constant problems with cramping and severe pain"; (2) her "complaints of low back pain"; and (3) her "attempt[] at

///
///
///
///

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

the hearing [to] raise new issues involving bleeding and incontinence."[3]  AR 16-17; *see* AR 66, 70, 250-52.

The ALJ acknowledged that Wortman's treating records reflected diabetic neuropathy.[4]  AR 17.  The ALJ found, however, that Wortman's allegation of fatigue was inconsistent with the absence of "any serious complaints of fatigue in the treating records."  AR 17.  This finding is supported by substantial evidence.  The ALJ's finding that there is "no indication of any complaints relative to the upper extremities" (AR 16) is not correct.  Wortman complained once of "pain [and] numbness in both arms" on April 13, 2007.  AR 231.  The subsequent treating records reflect no such complaints.  AR 228 (6/6/08), 229 (4/11/08), 232 (3/25/08), 230 (2/1/08), 233 (9/18/07).  The ALJ is correct that there are no clinical findings as to the upper extremities or treatment.  AR 16.

With respect to lower back pain, the ALJ acknowledged that the "treating source records reflect serious problems involving the lumbar spine.[5]  AR 17.  The ALJ found that Wortman's "complaints of low back pain [were] not consistent with her prehearing statements."  AR 17.  At the hearing, Wortman testified that she could sit for a "couple hours" at one time in a working position.  AR 252.  The ALJ found "she did not complain of such problems at the time of the consultative

---

[3] The ALJ relies in part on Wortman's conservative treatment in concluding "that the evidence of record shows that the claimant'[s] diabetes mellitus has not been as severe as found in [t]he 2004 hearing decision."  AR 17.  This Court does not construe the ALJ's decision as relying on conservative treatment to discount her credibility.

[4] The ALJ noted that the clinical findings do not show "decreased sensation or disturbance [of] gait."  AR 16.  The treating records show "[n]ormal gait" and normal sensation of bilateral feet on February 15, 2008 and March 25, 2008.  AR 194, 232.

[5] On February 16, 2007, Wortman had an electromyogram that was consistent with "[c]hronic lumbar radiculopathy affecting the Left L5 nerve root" and "[u]nderlying distal polyneuropathy."  AR 188-190, 208.  On May 3, 2007, an MRI "suggest[ed] diskitis L5/S1 along with disk protrusion and disk herniation centrally and more onto the right at the L5/S1 level."  AR 191.  It appears follow-up was delayed in May 2007 because Wortman was reportedly in jail.  AR 179.

medical evaluation in November 2006." AR 16.  This finding is incorrect.  At the consultative evaluation, Wortman complained that her back pain "comes with one hour of sitting." AR 149.  Thus, her ability to sit for two hours at one time as of February 2008 represents an improvement.  The ME found that Wortman could "sit for six hours out of eight with normal breaks, such as every two hours," and "would limit standing and walking to two hours out of eight." AR 263.  The ALJ adopted the ME's findings at the hearing (AR 17) and included them in his hypothetical to the VE (AR 268).  However, the ALJ did not specifically include the sitting, standing and walking limitations in his RFC.  AR 15.[6]

The ALJ states that Wortman "attempted at the hearing [to] raise new issues involving bleeding and incontinence which were not corroborated by the treating source records." AR 17.  After the February 2008 hearing, Wortman submitted medical records indicating that she sought treatment for incontinence of stool on February 1, 2008.  AR 230.  However, the subsequent medical records do not indicate any such complaints.  AR 223 (2/15/08), 229 (4/11/08), 228 (6/6/08).  It is unclear what "bleeding" is referenced by the ALJ.  Wortman testified she had "bleeding vessels in the back of my eyes." AR 250.  On February 1, 2008, an ophthalmologist diagnosed Wortman with "[n]onproliferative diabetic retinopathy [in] both eyes." AR 202-03.  The ME acknowledged this diagnosis (AR 263), and the ALJ included it in his list of severe impairments (AR 13).

Wortman argues the ALJ did not address her vision problems.  The ALJ found that Wortman "has not established a severe vision impairment that has lasted or is expected to last twelve months with appropriate treatment." AR 14.

---

[6] At the hearing on February 26, 2008, Wortman testified that her fatigue had become worse because she could stand only 15 minutes at a time, which is less than she could stand before.  AR 252.  On the other hand, in 2006 Wortman complained that she could stand only 5-10 minutes at a time due to back pain.  AR 149.  Accordingly, her ability to stand appears to have improved even according to her own statements.

8

The ALJ cited medical records indicating that Wortman's vision with correction was 20/25 in January 2007. In January 2008, Wortman's vision was 20/40 on the left with pinhole correction, and 20/50 on the right with pinhole correction. AR 14, 202. Wortman had cataracts in both eyes, which the ME testified would require at most one month of treatment. AR 264; AR 202-03. The ALJ's findings are supported by substantial evidence.

In summary, some of the ALJ's findings on credibility are supported by substantial evidence, and some findings are factually incorrect. In *Carmickle*, the Ninth Circuit stated that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*" *Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008) (italics in original). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Id.*

It is difficult to conduct this analysis because, as discussed above, the ALJ's opinion does not contain the specific sitting, standing and walking limitations that were included in the ME's opinion and apparently in the ALJ's hypothetical to the VE. It is therefore appropriate to remand this case so that the Commissioner may clarify the RFC and reevaluate Wortman's credibility.

**E.     Step Five**

At step five, the ALJ found that Wortman was capable of performing unskilled light work such as small parts assembler, lunch room counter attendant, and swatch clerk. AR 17-18. Wortman makes two arguments. First, Wortman argues that her RFC is inconsistent with jobs requiring Level 2 reasoning. Second, Wortman argues that the job of small parts assembler is inconsistent

9

with her RFC, which requires "no exposure to hazards such as moving machines" (AR 15).

The ALJ found, in pertinent part, that Wortman is "able to understand and carry out simple instructions, avoid ordinary hazards, and sustain concentration and attention for simple repetitive tasks, but not complex tasks." AR 15. Wortman was moderately limited in understanding, remembering and carrying out detailed instructions, and maintaining concentration and attention for extended periods. *Id.*

Level 2 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Wortman argues that a RFC of simple repetitive tasks is necessarily limited to Level 1 reasoning.[7] JS at 15. This argument has been rejected. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). Level 2 reasoning includes detailed but "involved" instructions, which is consistent with the ALJ's RFC of simple repetitive tasks, excluding complex tasks. *Id.* at 984-85; *Hackett v. Burnett*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning is consistent with RFC limited to simple repetitive tasks).

With respect to Wortman's second argument, the ALJ's RFC precluded "exposure to hazards such as moving machines." AR 15. In his hypothetical to the VE, the ALJ stated that Wortman should "avoid hazardous machinery" but did not specifically mention moving machines. AR 268. With that limitation, the VE identified small parts assembly work, lunch room counter attendant, and swatch clerk. Wortman argues that small parts assembly work is inconsistent with a RFC that precludes exposure to moving machines because a worker may be required

---

[7] Level 1 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

10

to load and unload "previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line." JS at 15 (quoting DOT 706.684-022).

Because this Court is remanding for reevaluation of Wortman's credibility and clarification of the RFC, the Commissioner may also consider this issue on remand.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the ALJ is remanded for (a) reevaluation of Wortman's credibility, (b) clarification of the RFC, and (c) consideration of Wortman's argument that avoidance of exposure to moving machines would preclude work as a small parts assembler.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 30, 2010

ALICIA G. ROSENBERG
United States Magistrate Judge